IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Action No. |
| ) | 12-00044-01-CR-W-DW |
| JOSHUA E. BOYLES, ) | |
| ) | |
| Defendant. ) | |

### REPORT AND RECOMMENDATION TO DENY
### DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Before the court is defendant's motion to suppress evidence seized from his person on January 28, 2012, on the ground that he was stopped without reasonable suspicion. I find that police had probable cause to arrest defendant, and the subsequent search of his person and backpack was a lawful search incident to arrest. Therefore, defendant's motion to suppress should be denied.

*I. BACKGROUND*

On January 28, 2012, two police officers stopped defendant because he was walking in the street where a sidewalk was provided. After stopping defendant, the officers frisked him and found a loaded handgun in his jacket pocket. It was then determined that defendant had an outstanding warrant, and he was arrested for that. A search incident to arrest revealed a baggie of crack cocaine. A search of defendant's backpack revealed a .380 magazine containing 23 rounds of ammunition as well as 21

separate rounds of ammunition. Defendant subsequently told officers he had gotten off the bus and began walking diagonally across the street toward a gas station. He disputed that he was jay-walking and drew a diagram showing his route across Independence Avenue. Defendant said he had purchased the gun early on the day of his arrest and that he knew he was not supposed to have a gun.

On February 7, 2012, an indictment was returned charging defendant with one count of possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On August 24, 2012, defendant filed the instant motion to suppress (document number 26). On August 31, 2012, the government filed a response (document number 29) arguing that the search of defendant's person was supported by reasonable suspicion and was a lawful search incident to arrest.

On September 11, 2012, I held a hearing on defendant's motion. The government appeared by Assistant United States Attorneys Shalanda Smith and Bruce Clark. The defendant was present, represented by Assistant Federal Public Defender Robert Kuchar. The following witnesses testified:

1. Detective Jeffrey Littlejohn,[1] Kansas City, Missouri, Police Department

---

[1] Detective Littlejohn was an officer at the time of this incident (Tr. at 4).

2.  Detective Teddy Taylor, Kansas City, Missouri, Police Department

In addition, the following exhibits were admitted:

P. Ex. 1  Police Report

P. Ex. 2  Diagram drawn by defendant showing how he crossed the street diagonally

P. Ex. 3  <u>Miranda</u> waiver form signed by defendant

P. Ex. 4  Patrol vehicle dash cam footage on a DVD

P. Ex. 5  Citation issued to defendant for Municipal Ordinance 70-786(a), failure to use a sidewalk

P. Ex. 6  Printout of Municipal Ordinance 70-786

## *II. EVIDENCE*

On the basis of the evidence presented at the suppression hearing, I submit the following findings of fact:

1.  On January 28, 2012, Officer Littlejohn was assigned to the Central Patrol Division which includes Independence Avenue (Tr. at 4). This area is now considered a "hotspot" -- an area of the city in which a majority of violent crimes happen (Tr. at 4). Officer Littlejohn does not remember whether the area was officially considered a hotspot on January 28, 2012, but in his experience, he knew it was an area where a majority of the city's violent crime occurs (Tr. at 18-19). Officer Littlejohn was patrolling with his partner, Officer Prichard (Tr. at 5, 20).

3

2. The officers were traveling west on Independence Avenue[2] at about 11:00 p.m. when they observed defendant walking east from the south side of the street (Tr. at 5). Officer Littlejohn did not know anything about defendant, i.e., his name, whether he had any felony convictions (Tr. at 20, 28). At the time, defendant was in the grassy area between the sidewalk and the street, and he looked directly at the officers as they drove by (Tr. at 5, 22). Officer Littlejohn believed defendant was going to walk out into the street but did not because he saw the officers (Tr. at 6, 22-23, 28). The officers saw defendant get back on the sidewalk and continue walking east until the police car was past him (Tr. at 6).

3. Officer Littlejohn watched defendant from the rearview mirror and observed that once the patrol car had passed, defendant stepped out into the street and began crossing the street (Tr. at 6, 11, 24, 35). Defendant walked across the street northbound across the street (Tr. at 24, 35). Officer Littlejohn turned his patrol car around to conduct a pedestrian check (Tr. at 6). As the patrol car turned around, defendant could be seen on the dashcam video as he finished crossing the street (Tr. at 25; P. Ex. 4). Defendant then began walking

---

[2]Independence Avenue is five lanes wide at this point -- two lanes going in each direction and a center turn lane (P. Ex. 4).

westbound on the sidewalk, after having been walking eastbound when he was on the other side of the street (Tr. at 25).

    4.    Although Officer Littlejohn does not normally stop people for jaywalking, he did this time because defendant had initially changed his course of action upon seeing the patrol car which was suspicious; he walked in the street which is a municipal violation; and after he crossed the street, he started walking back in the direction from which he had come  (Tr. at 7, 28).

    5.    Officer Littlejohn pulled up by defendant, activated his emergency lights, got out of the car, and told defendant to take his hands out of his pockets and "come over here" (Tr. at 11, 26-27).  According to Officer Littlejohn, defendant was not free to leave at that time (Tr. at 27, 39).  Defendant was initially very slow to respond to the commands, and he appeared to Officer Littlejohn to be trying to make a decision (Tr. at 12, 27).  Officer Littlejohn believed defendant was considering whether he should run, do what the officer said, or do something else (Tr. at 12).  Because of his experience working in this area, Officer Littlejohn's suspicions were aroused when defendant was slow to respond (Tr. at 12). He told defendant he needed to start listening or it was not going to end well (Tr. at 34).  In Officer Littlejohn's experience, when a police officer with emergency lights activated tells someone to take his hands out of

5

his pockets and the person is not trying to conceal anything, he does it immediately (Tr. at 34).

6. Defendant walked to the police car, placed his hands against it per Officer Littlejohn's command, and he was frisked for weapons (Tr. at 12). In his experience, whenever a person in this high-crime area is slow to obey a police command and changes his course of action upon seeing an officer, a frisk generally results in finding a weapon (Tr. at 12-13). Officer Littlejohn felt a gun in defendant's pocket, so he pinned defendant against the police car and called to Officer Prichard (Tr. at 14). The gun was removed from defendant's pocket, and defendant was placed in handcuffs (Tr. at 14-15). Police Officers are authorized to arrest any individual who violates a traffic ordinance (Tr. at 18). However, had defendant not had a gun on him, Officer Littlejohn would not have arrested him for the jaywalking violation (Tr. at 39).

7. Officer Littlejohn took the gun out of defendant's pocket and gave it to Officer Prichard who unloaded the gun and discovered that it had one round in the chamber and seven rounds in the magazine (Tr. at 60-61).

8. After the gun was found, Officer Littlejohn did a computer check and learned that defendant had outstanding warrants, so he was placed under arrest on those warrants (Tr. at 38). A search incident to arrest was done, and the officers

6

recovered from defendant's backpack a large number of sandwich bags, a drum-style magazine for a .380-caliber weapon with 23 live rounds, and 21 additional rounds of .380 ammunition, and in his pants pocket a bag of crack cocaine (Tr. at 63-64).

9.  The dashcam video shows two other individuals jaywalking; however, Officer Littlejohn does not know whether he observed those people that night or if he was looking at the car beside him at the time (Tr. at 21).

10. When Officer Prichard commented that defendant was being cooperative, Officer Littlejohn believed he was comparing defendant's actions after he was handcuffed with others they have dealt with -- individuals who try to kick or otherwise assault and resist the officers, who refuse to provide any information about their identity, etc. (Tr. at 30).

11. At approximately 9:15 a.m., the following morning on January 29, 2012, Detective Teddy Taylor advised defendant of his Miranda rights, and defendant signed a Miranda waiver form (Tr. at 42-45; P. Ex. 3).  Defendant said that he had just gotten off the bus and was walking diagonally across Independence Avenue towards a gas station (Tr. at 46).  Because Detective Taylor did not understand exactly what defendant was trying to explain,

7

defendant drew a diagram (Tr. at 46; P. Ex. 2). The diagram[3]
shows that defendant crossed most of the street in a diagonal
pattern and then changed direct and headed toward the sidewalk in
another diagonal pattern (Tr. at 46-48; P. Ex. 2).

    12. The interview lasted approximately 30 minutes (Tr. at
50). Part of it dealt with defendant's belief that he had not
been jaywalking, but the focus of the interview was the gun and
the cocaine found in defendant's possession (Tr. at 50). When
defendant denied the jaywalking and tried to describe walking
"diagonally," he drew the diagram depicted in P. Ex. 2 (Tr. at
51).

### III. INITIAL STOP

    Defendant argues that he was stopped without reasonable
suspicion because "he, as a pedestrian, crossed a public roadway
by a route of right angles, which is the legal and appropriate
way to cross a roadway." Defendant's argument is without merit.

    To make an investigative stop, officers must have reasonable
suspicion that criminal activity is afoot; and the reasonable

---

[3] 

suspicion must be based upon specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. Terry v. Ohio, 392 U.S. 1, 25-30 (1968). The existence of reasonable suspicion is determined from the totality of the circumstances in light of the officers' experience and collective knowledge. United States v. Sokolow, 490 U.S. 1, 7-10 (1989); United States v. Cortez, 449 U.S. 411, 418 (1981).

The principal components of a determination of reasonable suspicion will be the events which occurred leading up to the stop, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion. Ornelas v. United States, 517 U.S. 690, 696 (1996). "A police officer views the facts through the lens of his police experience and expertise. The background facts provide a context for the historical facts, and when seen together yield inferences that deserve deference." Id. at 699. Therefore, the facts must be viewed in light of the officer's experience and familiarity with criminal activity. United States v. Johnson, 64 F.3d 1120, 1124 (8th Cir. 1995), cert. denied, 516 U.S. 1139 (1996); United States v. Condelee, 915 F.2d 1206, 1209 (8th Cir. 1990). "Even innocent actions may give rise to reasonable suspicion if they warrant consideration

9

under the totality of the circumstances." United States v. Johnson, 64 F.3d at 1124.

In this case, the officers knew that the area was one known for a high incidence of violent crime; they observed defendant cross the street (consisting of five lanes of traffic) which was against the law; they observed him stop his course of action when he saw the police car which, in their experience and in that area, was suspicious; and they saw him head the opposite direction once he crossed Independence Avenue.  Officer Littlejohn not only had reasonable suspicion that criminal activity was afoot, he observed the violation as defendant crossed Independence Avenue while Officer Littlejohn was watching in his rearview mirror.  When an officer observes a pedestrian violate the law by walking in the street when a sidewalk is available, as was the case here, the officer may arrest the individual and that arrest is supported by probable cause.  See United States v. Pratt, 355 F.3d 1119, 1123 (8th Cir. 2004).

In Pratt, the defendant was observed walking in the street in Kansas City when a sidewalk was available.  The court held that the police officers had probable cause to arrest Pratt. Such is the case here.  Defendant's argument that he was stopped after having lawfully crossed the street is without merit -- he drew a map of how he crossed the street; it was not in a cross

10

walk or even in a straight line or, as he argues in his motion, at right angles; the copy of the dashcam video shows that there are no crosswalks in the area where defendant crossed. If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in the officer's presence, he may lawfully arrest the offender. Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001). In this case, the officers had probable cause to arrest defendant. Defendant's arrest was supported by probable cause despite Officer Littlejohn's testimony that he probably would not have arrested defendant for that offense absent the warrants and the finding of the gun.

## IV.  SEARCH OF DEFENDANT'S PERSON/BACK PACK

Defendant argues that even if he had been legally stopped, the frisk and search of his person exceeded the lawful reason for his detention. Defendant's argument is without merit.

Assuming the stop of defendant was only a Terry investigative stop, or that the officers intended only to give him a ticket for jaywalking and not formally arrest him, the search of his person was not excessive. The Supreme Court has long allowed de minimus intrusions of the liberty of a person detained by a Terry stop to advance officer safety, such as a frisk for weapons. Terry v. Ohio, 392 U.S. 1, 27 (1968). The

11

existence of reasonable suspicion is determined from the totality of the circumstances in light of the officers' experience and collective knowledge. United States v. Sokolow, 490 U.S. 1, 7-10 (1989); United States v. Cortez, 449 U.S. 411, 418 (1981). Officers may take such steps as are reasonably necessary to protect their safety and to maintain the status quo during the course of the stop. United States v. Hensley, 469 U.S. 221, 235 (1985). Law enforcement officers may conduct

> a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given . . . to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

Terry v. Ohio, 392 U.S. 1, 27 (1968)(citations omitted).

Officer Littlejohn testified that in his experience, whenever a person in this high-crime area is slow to obey a police command and changes his course of action upon seeing an officer, a frisk generally results in finding a weapon. Based on this experience, the officers were justified in frisking defendant for weapons in order to protect their safety and maintain the status quo during the course of the stop.

However, as discussed above, the officers were actually authorized to arrest defendant (1) because they observed him

12

walking in the street, (2) because they called in his identification and learned that he had outstanding warrants, (3) and because they found the gun during a lawful frisk for weapons and defendant was a felon.[4] The Supreme Court has repeatedly held that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions." Arizona v. Gant, 556 U.S. 332, 338 (2009) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). One such exception is a search incident to a lawful arrest. Id. Following a lawful custodial arrest, a search of the arrestee's person incident to arrest "requires no additional justification." United States v. Robinson, 414 U.S. 218, 235 (1973). The search incident to arrest extends to a backpack carried by the suspect. United States v. Jones, 535 F.3d 886, 891 (8th Cir. 2008); United States v. Oakley, 153 F.3d 696, 698 (8th Cir. 1998). Therefore, the more thorough search of defendant's person resulting in seizure of the crack cocaine and the search of his backpack resulting in seizure of the magazine and additional rounds of ammunition were lawful incident to his arrest.

---

[4]The dashcam footage indicates that defendant told the officers he was a felon prior to them confirming that fact with dispatch.

13

## V. CONCLUSION

Based on the above-stated findings of fact and the law as discussed in sections III and IV, I conclude that defendant lawfully stopped, lawfully arrested, and lawfully searched. Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order denying defendant's motion to suppress evidence.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has 14 days from the date of this report and recommendation to file and serve specific objections.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
November 20, 2012